1  ANDREW E. PARIS (SBN 162562)
   GRACE W. KANG (SBN 271260)
2  SAYAKA KARITANI (SBN 240122)
   **ALSTON & BIRD LLP**
3  333 South Hope Street, Sixteenth Floor
   Los Angeles, California 90071
4  Telephone:  (213) 576-1000
   Facsimile:  (213) 576-1100
5  drew.paris@alston.com
   grace.kang@alston.com
6  sayaka.karitani@alston.com

7  Attorneys for Defendant
   **DIRECTV, INC.**
8

9                 **UNITED STATES DISTRICT COURT**

10               **NORTHERN DISTRICT OF CALIFORNIA**

11 | MA/DA PROPERTIES INC., individually and on | Case No.:  3:11-cv-00587-CRB
   | behalf of all others similarly situated,
12 |                                            | Hon. Charles R. Breyer
   |                Plaintiff,
13 |                                            | **DIRECTV'S NOTICE OF MOTION AND**
   |       v.                                   | **MOTION TO DISMISS FIRST AMENDED**
14 |                                            | **COMPLAINT; MEMORANDUM IN**
   | DIRECTV, Inc., a Delaware corporation,     | **SUPPORT THEREOF**
15 |
   |                Defendant.                  |
16 |                                            | Date:        July 8, 2011
   |                                            | Time:        10:00 a.m.
17 |                                            | Judge:       Hon. Charles R. Breyer
   |                                            | Courtroom:   8
18

19

20

21

22

23

24

25

26

27

28

DIRECTV's Motion to Dismiss First Amended Complaint
                                                   Pursuant to Fed. R. Civ. P. 12(B)(1) & (B)(6)

# TABLE OF CONTENTS

**Page(s)**

I.     SUMMARY OF ARGUMENT / INTRODUCTION ............................................................. 1

II.    STATEMENT OF FACTS ......................................................... 4

III.   DISCUSSION ......................................................... 6

    A.   MA/DA Lacks Capacity And Therefore Standing to Bring Suit In Federal Court Because It Is A Suspended California Corporation ............................................. 6

    B.   This Court Lacks Subject Matter Jurisdiction Over MA/DA's Claims Because CAFA's Exceptions Apply, Where The Local Action Doctrine Limits The Court's Jurisdiction To Claims Involving Only California Properties. ........................ 7

        1.   A federal court lacks jurisdiction over local actions outside of the forum state's borders. .................................................. 7

        2.   Whether an action is local or transitory is determined by California law. ................................................................ 8

        3.   MA/DA pleads a single cause of action that seeks local relief. ...................... 8

        4.   This action is also local because its essence is trespass. ................................. 11

        5.   The Court lacks jurisdiction over any claims that do not arise from California property. ....................................................... 12

        6.   CAFA's local controversy exception defeats jurisdiction because at least one-third of the putative class members must be non-California citizens. .................................................................. 13

    C.   The Court Should Dismiss MA/DA's UCL Claim Under The Doctrine Of Equitable Abstention. ................................................... 14

    D.   MA/DA Fails To Allege Facts Establishing Injury In Fact. ........................................ 17

IV.   CONCLUSION ................................................................ 18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Abrego v. Dow Chem. Co.*
    443 F.3d 676 (9th Cir. 2006) ...................................................................13

*APL Co. PTE Ltd. v. UK Aerosols Ltd., Inc.*
    No. C 05-0646, 2007 WL 2238048 (N.D. Cal. Aug. 2, 2007)..............................2, 6

*Building Owners & Managers Ass'n Int'l v. F.C.C.*
    254 F.3d 89 (D.C. Cir. 2001) ...................................................................16

*Columbia River Packers' Ass'n v. McGowan*
    219 F. 365 (9th Cir. 1914) ........................................................................7

*DeCoe v. Gen. Motors Corp.*
    32 F.3d 212 (6th Cir. 1994) .....................................................................11

*Ellenwood v. Marietta Chair Co.*
    158 U.S. 105, 15 S.Ct. 771, 39 L.Ed. 913 (1895) ......................................2, 7

*Hallaba v. Worldcom Network Servs., Inc.*
    196 F.R.D. 630 (N.D. Okla. 2000).............................................................12

*Hayes v. Gulf Oil Corp.*
    821 F.2d 285 (5th Cir. 1987) ...................................................................11

*Ingraham v. Williams*
    173 F. Supp. 1 (N.D. Cal. 1959) ................................................................6

*Jarbough v. Attorney Gen. of U.S.*
    483 F.3d 184 (3d Cir. 2007).....................................................................11

*Josevig-Kennecott Copper Co. v. James F. Howarth Co.*
    261 F. 567 (9th Cir. 1919) ........................................................................8

*Kingsborough v. Sprint Commc'ns Co.*
    673 F. Supp. 2d 24 (D. Mass. 2009) .......................................3, 11, 12, 13

*Livingston v. Jefferson*
    15 F.Cas. 660 (Va. Cir. Ct. 1811) ..............................................................7

*Nat'l Science & Tech. Network, Inc. v. F.C.C.*
    397 F.3d 1013 (D.C. Cir. 2005).................................................................16

*Opera Plaza Residential Parcel Homeowners Ass'n v. Hoang*
    No. C. 02-01084 WHA, 2002 WL 1787214 (N.D. Cal. July 22, 2002), *aff'd,* 376 F.3d
    831 (9th Cir. 2004)..................................................................................17

*Prawoto v. Primelending*
   720 F. Supp. 2d 1149 (C.D. Cal. 2010) ..................................................2, 7, 8

*Reudy v. Clear Channel Outdoor, Inc.*
   No. 02-5438 SC, 2010 WL 4918792 (N.D. Cal. Nov. 29, 2010) ..........................17

*Serrano v. 180 Connect, Inc.*
   478 F.3d 1018 (9th Cir. 2007) ..................................................2, 13

*United States v. Byrne*
   291 F.3d 1056 (9th Cir. 2002) ..........................................................7

**CALIFORNIA CASES**

*Alvarado v. Selma Convalescent Hosp.*
   153 Cal. App. 4th 1292 (2007) ..................................................14, 17

*Civic Western Corp. v. Zila Indus., Inc.*
   66 Cal. App. 3d 1 (1977) ..................................................9, 11

*Coley v. Hecker*
   206 Cal. 22 (1928) ..........................................................8

*Desert Healthcare Dist. v. Pacificare, FHP, Inc.*
   94 Cal. App. 4th 781 (2001) ..................................................3, 14

*Foundation Engineers, Inc. v. Super. Ct.*
   19 Cal. App. 4th 104 (1993) ..................................................2, 10

*K.R.L. P'ship v. Super. Ct.*
   120 Cal. App. 4th 490 (2004) ..........................................................8

*Los Angeles Trust & Sav. Bank v. Bortenstein*
   47 Cal. App. 421 (1920) ..........................................................10

*Massae v. Super. Ct.*
   118 Cal. App. 3d 527 (1981) ..................................................8, 9, 10

*Miller v. Nat'l Broad. Co.*
   187 Cal. App. 3d 1463 (1986) ..........................................................11

*Ophir Silver Mining Co. v. Super. Ct.*
   147 Cal. 467 (1905) ..................................................9, 10

*Palm Valley Homeowners Ass'n, Inc. v. Design MTC*
   85 Cal. App. 4th 553 (2000) ..................................................2, 7

*Shamsian v. Dep't. of Conservation*
   136 Cal. App. 4th 621 (2006) ..................................................3, 14, 17

*Slater v. Blackwood*
    15 Cal. 3d 791 (1975) ...............................................................................................9

*Strosnider v. Pomin*
    32 Cal. App. 2d 103 (1939) ................................................................................8, 12

*Williams v. Merced Irrigation Dist.*
    4 Cal. 2d 238 (1935) ..............................................................................................2, 9

**FCC AUTHORITIES**

*In re CS Wireless Systems, Inc. d/b/a Omnivision of San Antonio*
    CSR 4947-O, 1997 WL 631407 (F.C.C. Oct. 14, 1997)....................................16

*In re Philip Wojcikewicz*
    CSR-6030-0, 2003 WL 22227634 (F.C.C. Sept. 25, 2003)..............................16

*In re Preemption of Local Zoning Regulation of Satellite Earth Stations and Restrictions on Over-the-Air Reception Devices*, FCC 98-273
    1998 WL 888546 (F.C.C. Dec. 23, 1998) ...................................................15, 18

**FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

Telecommunications Act of 1996, § 207, Pub. L. No. 104-104,
    110 Stat. 56 (1996) .................................................................................................15

28 U.S.C. § 1332 .................................................................................................2, 13, 14

47 U.S.C. § 154(i) ..........................................................................................................17

47 U.S.C. § 253(d) ...........................................................................................................4

47 U.S.C. § 303(v) ..................................................................................................15, 16

47 C.F.R. § 1.4000(a) ................................................................................................3, 16

47 C.F.R. § 1.401 .......................................................................................................4, 17

47 C.F.R. § 1.425 .............................................................................................................4

Fed. R. Civ. P. 12(b)(1)..............................................................................................1, 14

Fed. R. Civ. P. 12(b)(6)....................................................................................................1

Fed. R. Civ. P. 17(b) .......................................................................................................6

**STATE: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

Cal. Bus. & Prof. Code § 17200 ....................................................................................6

Cal. Rev. & Tax. Code § 19719.......................................................................................7

Cal. Rev. & Tax. Code § 23301 ..............................................................................2, 7

Cal. Civ. Proc. Code § 392 ..................................................................................8, 9, 10

Cal. Civ. Proc. Code § 660 ...........................................................................................10

**OTHER AUTHORITIES**

5 Witkin, *Summary of California Law, Torts* § 696 (10th ed. 2005)..............................11

*Restatement (Second) of Torts* § 168 (1965)...................................................................9

**NOTICE OF MOTION AND MOTION**

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that in Courtroom 8 of this Court located at 450 Golden Gate Avenue, San Francisco, California, 94102, on July 8, 2011 at 10:00 a.m., or as soon thereafter as this matter may be heard, defendant DIRECTV, Inc. ("DIRECTV") will and hereby does move this Court for an order dismissing the First Amended Complaint ("FAC" or "Amended Complaint") of MA/DA Properties Inc. ("MA/DA"), pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

DIRECTV requests that the Court dismiss MA/DA's complaint in its entirety on the grounds that:  (1) MA/DA lacks capacity to sue and therefore standing under Fed. R. Civ. P. 12(b)(1); (2) the Court lacks subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1); (3) the UCL claim should be dismissed on equitable abstention grounds (Fed. R. Civ. P. 12(b)(6)) and inherent powers; and (4) MA/DA has failed to allege injury under any claim (Fed. R. Civ. P. 12(b)(6)).  This motion is based upon this Notice of Motion, the Memorandum of Points and Authorities, the Request for Judicial Notice filed herewith, and other papers and pleadings on file and on such other argument and evidence as may be presented to the Court at or prior to the hearing on this motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      SUMMARY OF ARGUMENT /  INTRODUCTION**

Like the related matters of *Jacen Management LLC v. DIRECTV* and *Eldee-K Rental Properties v. DIRECTV*, this is a putative class action based on a dispute over defendant DIRECTV, Inc.'s authorization to install satellite television reception equipment ("Equipment") in residential rental properties at the request of tenants.  Plaintiff MA/DA Properties Inc. is the owner of residential rental property in Contra Costa county, California.  It contends that DIRECTV has "encroached" upon its property and installed Equipment without its authorization at "several" of its tenants' units, causing damage to its buildings.  MA/DA alleges that DIRECTV did not obtain its consent for the installations and instead relied on the tenants' certification in a DIRECTV document ("Permission Form") that the tenant had obtained MA/DA's consent, or that such consent was unnecessary because the lease did not require it.  Using the Permission Form as a springboard,

1  MA/DA asserts that DIRECTV's installation activity at rental properties across the country

2  constitutes a trespass that can be pursued in a nationwide class action on the theory that such conduct

3  is an "unfair" business practice and a negligent breach of a "legal duty not to invade" landlords'

4  property without consent.

5  MA/DA's putative class claim founders at the outset because the California Franchise Tax

6  Board has suspended MA/DA for failure to pay its taxes and it therefore lacks the capacity to initiate

7  and pursue a lawsuit against DIRECTV.  *See APL Co. PTE Ltd. v. UK Aerosols Ltd., Inc.,* No. C 05-

8  0646, 2007 WL 2238048, at *1 (N.D. Cal. Aug. 2, 2007); *Palm Valley Homeowners Ass'n, Inc. v.*

9  *Design MTC*, 85 Cal. App. 4th 553, 559-61 (2000) (California corporation suspended for

10  nonpayment of taxes is disabled from engaging in litigation under Cal. Rev. Code § 23301).  This is

11  black letter law and requires dismissal of the complaint.

12  Even if MA/DA were able to reinstate its status as a corporation in good standing, the suit

13  would still have to be dismissed for lack of jurisdiction.  MA/DA bases jurisdiction on diversity

14  established by the Class Action Fairness Act ("CAFA").  FAC, ¶ 5.  CAFA contains very specific

15  requirements that are applicable where the principal defendant is a citizen of the forum state, as is

16  the case here.  Generally, a court must decline jurisdiction where two-thirds of the members of the

17  putative class are also citizens of the forum state, and a court may decline jurisdiction if one-third to

18  two-thirds of the putative class members are citizens of the forum state.  28 U.S.C. § 1332(d)(3-4);

19  *Serrano v. 180 Connect, Inc.,* 478 F.3d 1018, 1022-23 (9th Cir. 2007).  MA/DA evidently purports

20  to avoid these provisions by alleging a nationwide class action.  However, there can be no

21  nationwide class here, because MA/DA's claims concern an injury to, and interest in, real property

22  and thus are local in nature.  Where a suit is local and based upon an interest in property, the

23  jurisdiction must be exercised in the state where the property is located.  *E.g., Ellenwood v. Marietta*

24  *Chair Co.*, 158 U.S. 105, 108 (1895).  In the Ninth Circuit, whether an action is local or transitory is

25  determined by the law of the forum state.  *Prawato v. Primelending*, 720 F. Supp. 2d 1149 (C.D.

26  Cal. 2010).  Under California law, MA/DA seeks relief that is local.  *See Foundation Engineers, Inc.*

27  *v. Super. Ct.*, 19 Cal. App. 4th 104, 111-12 (action for damages to building is local); *Williams v.*

28  *Merced Irrigation Dist.*, 4 Cal. 2d 238, 241 (1935) (action for injunction against right of possession

to land and damages caused by reason of unconsented entry to land is local). Therefore, under the local action doctrine, the Court has subject matter jurisdiction only over those claims arising in California. *E.g.*, *Kingsborough v. Sprint Commc'ns Co.,* 673 F. Supp. 2d 24, 31-32 (D. Mass. 2009) (holding court lacks jurisdiction over claims by property owners alleging injury to and trespass on property outside state's territorial boundaries; the local action doctrine "'is established firmly in federal jurisprudence and the case law makes it as clear as anything can be that this distinction exists and that local actions can be brought only where the property involved in the action is located'"). Consequently, when the scope of the putative class is reduced to (at most) Californians, CAFA's requirements can not longer be met because DIRECTV is also a Californian. CAFA therefore cannot support federal jurisdiction and there is no other jurisdictional basis for the suit.

While the jurisdictional inquiry ends the matter, even if the Court had subject matter jurisdiction, it should abstain from exercising it. The doctrine of equitable abstention is well established in California and is applied by courts to abstain from adjudicating actions where complex regulatory schemes are implicated and which may result in the court's interference with the functions of an administrative agency. *See Desert Healthcare Dist. v. Pacificare, FHP, Inc.,* 94 Cal. App. 4th 781, 795 (2001); *Shamsian v. Dep't. of Conservation,* 136 Cal. App. 4th 621, 642 (2006) (holding equitable abstention barred UCL claim where judicial intervention would "interfere" with the Department of Conservation's "complex statutory arrangement"). That is precisely the situation here. The Federal Communications Commission ("FCC") has exclusive jurisdiction to issue rules related to the installation of satellite dishes under the Telecommunications Act of 1996 and has issued the Over-the-Air-Reception Devices ("OTARD") Rule, which authorizes tenants to install satellite Equipment *without* the consent of landlords in areas under their exclusive use or control (*e.g.,* patios, balconies). 47 C.F.R. § 1.4000(a). MA/DA's requested relief is a nationwide injunction requiring DIRECTV to obtain the landlord's consent in every instance before performing *any* Equipment installations and to seek consent a second time where installations have already been performed and remove Equipment if the landlord will not grant it. MA/DA makes no exception for instances in which the tenant has obtained the landlord's consent pursuant to the Permission Form, the tenant's lease permits the installation, or, importantly, the installation is authorized by the

3

OTARD Rule.  MA/DA thus seeks to invalidate DIRECTV's alleged practice of relying on the tenant to obtain consent or confirm that no consent is necessary under his lease.  Not only is does this sweeping mandatory injunction conflicts with the OTARD Rule, it is also tantamount to an FCC rule and should only be issued by the FCC after due consideration and an appropriate comment period in accordance with federal law.  *See* 47 U.S.C. § 253(d); 47 C.F.R. §§ 1.401-1.425.

Finally, MA/DA fails to allege facts to establish injury in fact.  It alleges the Equipment was installed at "areas on the property" without DIRECTV obtaining its consent, but because the OTARD Rule permits installation in an area under the tenant's exclusive use or control without obtaining advance consent, this allegation is insufficient to establish injury.  Even if consent from the landlord were necessary in this instance, MA/DA does not allege that it did not give consent to the tenants who are alleged to have completed the Permission Form, certifying that they have obtained permission from MA/DA verbally.  *See* FAC, ¶11.

In sum, the Amended Complaint should be dismissed because MA/DA lacks capacity to sue and for want of subject matter jurisdiction under the intersection of CAFA and the local action doctrine.  Even if the Court concludes that it has jurisdiction, it should abstain from exercising it in light of the FCC's exclusive jurisdiction to rule-make in this area.  MA/DA has not sufficiently alleged injury in any event.

## II.   STATEMENT OF FACTS

Plaintiff MA/DA Properties Inc. is a corporation organized under the laws of California.  FAC, ¶ 3.  MA/DA owns "multiple commercial residential" properties in Contra Costa county, California.  *Id.*  Defendant DIRECTV, Inc. is a California corporation with its principal place of business in California. DIRECTV's Request for Judicial Notice, dated May 31, 2011, filed concurrently herewith (hereinafter "RJN"), Ex. D.   DIRECTV's principal place of business is alleged to be in California.  FAC, ¶ 4.

DIRECTV is the nation's largest direct broadcast satellite television provider.  To receive DIRECTV's service, a customer must have a satellite dish connected by a cable to at least one integrated receiver-decoder ("receiver") within the customer's home.  The satellite dish may be mounted anywhere with a clear view of the southern sky, where it receives encoded signals

transmitted by DIRECTV's fleet of satellites in geosynchronous orbit over the United States.  The signals are decrypted by the receiver and displayed on the customer's television.

MA/DA contends that "DIRECTV installs the hardware by drilling holes in the building and bolting or otherwise permanently attaching the hardware to the building."  FAC, ¶ 8.  MA/DA alleges that DIRECTV requires its subscribers who reside in rental property to complete a form before the installation of the Equipment ("Permission Form").  *Id.*, ¶ 11.  Part 1 of the Permission Form provides a space for the landlord to sign, indicating his authorization for the installation in writing.  *Id.*  Alternatively, in Part 2 of the form, the tenant signs, certifying that they have obtained verbal authorization from the landlord or that the lease does not require landlord consent.  *Id.*  The Permission Form states:

> DEAR PROSPECTIVE DIRECTV CUSTOMER,
>
> Congratulations on your decision to sign up for DIRECTV® service! You have made the best choice in digital television entertainment and we are confident you will be thrilled with the service.
>
> **To ensure you have a smooth installation experience, if you do not own the residence in which you intend to install your DIRECTV® System, we ask that you obtain landlord approval prior to any installation if necessary.**
>
> Installation of a DIRECTV System may involve modifications to the residence. While these modifications are often minor, standard professional installation many times includes the drilling of holes in order to run cable and attaching a dish securely to the outside of the structure. Any such type of modification may be forbidden pursuant to the terms of your lease/rental agreement or may require pre-approval by the landlord.  **Please be advised that landlord approval is often the case with multi-tenant apartment buildings.**
>
> You should carefully review your lease agreement to determine if you have the right to make such modifications.  **If landlord approval is required, please request that the landlord, or its authorized representative, sign the bottom of this form to acknowledge authorization for the installation and provide this signed form to the DIRECTV technician at the time of installation.  In the alternative, if landlord verbally gives you permission (or if landlord approval is not required pursuant to your lease or rental agreement), please indicate that below and sign as well.**  . . . .

Permission Form attached as Ex. A to RJN (emphasis added).

MA/DA contends that DIRECTV does not seek approval *directly* from the landlord, and relies on the written authorization provided by the landlord in Part 1 of Permission Form or the

1    certification of verbal authorization by the landlord in Part 2 of the form provided by the tenant.[1]

2    *See* FAC, ¶ 12.   MA/DA alleges DIRECTV has installed Equipment at "several" tenants at its

3    property.  *Id.*, ¶ 17. Notably, MA/DA makes no allegation as to whether it gave its consent to the

4    "several" tenants for the installations.

5         MA/DA pleads a claim for a violation of California's Unfair Competition Law, Bus. & Prof.

6    Code § 17200 *et seq.* (Count I) and a negligent claim seeking damages split in two, one for violation

7    of a "duty not to invade the Property of Plaintiff," and the other for violation of a "duty not to invade

8    the common areas or restricted areas of the property of Plaintiff" (Counts II, III).[2]   MA/DA seeks to

9    certify a nationwide class defined as:  "all persons or entities that own and lease residential real

10   estate in the United States (the "Landlords") upon which Defendant DIRECTV or its agents

11   ("DIRECTV") have permanently installed DIRECTV hardware after obtaining Part 2 of a

12   DIRECTV authorization form to the installation of the hardware."  FAC, ¶ 19.

13   **III.   DISCUSSION**

14        **A.   MA/DA Lacks Capacity And Therefore Standing to Bring Suit In Federal Court Because It Is A Suspended California Corporation**

15        Under Federal Rule of Civil Procedure 17(b), the "[c]apacity to sue or be sued is determined

16   … for a corporation, by the law under which it was organized."  Accordingly, "California state law

17   governs the rights of suspended [California] corporations, and the ability of such an entity to sue and

18   defend actions in state and federal courts depends on its status as a corporation in good standing.

19   Therefore, it is proper for this court to look to state law for its treatment of suspended corporations . .

20   . ."  *APL Co. PTE Ltd.,* 2007 WL 2238048, at *1 (suspended California corporation cannot pursue an

21   appeal in federal court); *Ingraham v. Williams,* 173 F. Supp. 1 (N.D. Cal. 1959) (agent of the

22   corporation has no right to defend action in district court where corporation is suspended for

23   nonpayment of California corporation tax).

24        A California business entity's powers, rights and privileges may be suspended or forfeited by

25

26   _____

27   [1]  MA/DA does not challenge DIRECTV's use of Part 1 of the Permission Form.

28   [2]  Other than minor-wordsmithing, the addition of the purported second negligence cause of action (at best, a sub-set of the first negligence claim) is the only apparent substantive change between the original complaint and the FAC.

the Franchise Tax Board for failure to file a return and/or failure to pay taxes, penalties, or interest. Cal. Rev. & Tax. Code § 23301. A suspended California corporation may not bring suit, defend actions brought against it, or appeal from adverse decisions. Cal. Rev. & Tax. Code § 19719; *Palm Valley Homeowners Ass'n, Inc.*, 85 Cal. App. 4th at 556, 560 (suspended corporations are "disabled from participating in litigation activities.").

The California Franchise Tax Board suspended MA/DA's "powers, rights and privileges on December 1, 2010, pursuant to the provisions of the California Revenue and Taxation Code," and MA/DA's "powers, rights, and privileges remain suspended" as of May 27, 2011. (RJN, Ex. C (certified copy of MA/DA's corporate status form)). MA/DA therefore lacks capacity and standing to bring this action and cannot pursue its claims against DIRECTV in this Court.

**B.   This Court Lacks Subject Matter Jurisdiction Over MA/DA's Claims Because CAFA's Exceptions Apply, Where The Local Action Doctrine Limits The Court's Jurisdiction To Claims Involving Only California Properties.**

**1.   A federal court lacks jurisdiction over local actions outside of the forum state's borders.**

The "local action" doctrine vests exclusive jurisdiction over actions involving land in the forum where the land is located.[3] *Ellenwood v. Marietta Chair Co.,* 158 U.S. 105, 108, 15 S.Ct. 771, 39 L.Ed. 913 (1895) (finding that the federal court in Ohio "had no jurisdiction of the cause of action" alleging a trespass upon land in West Virginia); *Livingston v. Jefferson,* 15 F. Cas. 660, 664 (Va. Cir. Ct. 1811) (holding that the local action doctrine imparts a limitation on a court's jurisdiction over trespass case); *see also Columbia River Packers' Ass'n v. McGowan,* 219 F. 365, 377 (9th Cir. 1914) , aff'd, 245 U.S. 352 (1917) ("[W]here the suit is strictly local, the subject-matter is specific property, and the relief when granted is such that it must act directly upon the subject-matter, and not upon the person of the defendant the jurisdiction must be exercised in the state where the subject-matter is situated"); *United States v. Byrne,* 291 F.3d 1056, 1060 (9th Cir. 2002) ("The

---

[3]  As explained in the excellent discussion in *Prawoto v. Primelending,* 720 F. Supp. 2d 1149 (C.D. Cal. 2010), the doctrine developed from *Livingston v. Jefferson,* 15 F.Cas. 660 (Va. Cir. Ct. 1811), in which Edward Livingston sued Thomas Jefferson for the federal government's seizure of land along the Mississippi River in New Orleans. Livingston sued Jefferson in Virginia where he resided. Chief Justice John Marshall, riding circuit, analyzed the ancient English common law distinction between transitory and local actions. Justice Marshall held that the cause of action sounded in trespass, and was therefore local and must be brought in New Orleans. *Id.* at 664.

1    federal district courts' jurisdiction over actions concerning real property is generally coterminous
2    with the states' political boundaries.").

3         **2.    Whether an action is local or transitory is determined by California law.**

4         The local action doctrine applies in cases like MA/DA's where the action seeks some form of
5    right or interest in real property.  In the Ninth Circuit, the question of whether the action is local or
6    transitory is to be determined by the law of the forum state.  *Josevig-Kennecott Copper Co. v. James*
7    *F. Howarth Co.,* 261 F. 567, 569 (9th Cir. 1919); *Prawoto v. Primelending,* 720 F. Supp. 2d 1149,
8    1154 (C.D. Cal. 2010) (district court in Ninth Circuit bound to apply state law in determining local
9    action).  California Code of Civil Procedure § 392 defines a local action as one seeking recovery or a
10   "determination in any form" of an interest in property, as well as for "injuries to property."  Cal. Civ.
11   Proc. Code § 392(a).  "Injury to property" is read broadly to include injuries of all types, not merely
12   physical invasions.  *Strosnider v. Pomin*, 32 Cal. App. 2d 103, 109 (1939) ("The term 'injury to
13   property' is in itself a wider and less technical term than 'trespass to real property.'  As applied to
14   questions of venue, it has been declared to embrace every wrong which in legal contemplation is an
15   injury to real property, not only the direct and forcible injury, but consequential injuries, and
16   threatened injuries to land, and even a mere nonfeasance, as permissive waste.")  (*quoting Coley v.*
17   *Hecker*, 206 Cal. 22 (1928)) (emphasis added).  In applying Section 392, courts "'generally look to
18   the main relief sought, as determined from the complaint.'"  *Prawoto*, 720 F. Supp. 2d at 1155
19   (*quoting K.R.L. P'ship v. Super. Ct.,* 120 Cal. App. 4th 490, 496-97 (2004)).

20        **3.    MA/DA pleads a single cause of action that seeks local relief.**

21        To properly determine the action's character, the Court must first construe the complaint and
22   determine the primary right allegedly breached by DIRECTV.  *See Massae v. Super. Ct.,* 118 Cal.
23   App. 3d 527, 553 (1981) ("Although in form the complaint is divided into three 'causes of action,' it
24   is apparent that as a whole it purports to describe a single 'primary right' assertedly breached by the
25   defendants to the detriment of [Plaintiffs].")  Here, as in *Massae,* MA/DA has divided its claim into
26   three counts, but there is only a single right asserted, which is the right of MA/DA to be free from
27   the (allegedly) unauthorized installation of DIRECTV Equipment on its properties.  *See* FAC, ¶¶ 1,
28   17, 22, 30.

MA/DA's pursuit of two legal theories (UCL and negligence) and two forms of relief does not change this analysis. *See Slater v. Blackwood,* 15 Cal.3d 791, 795 (1975). Given that there is only one cause of action:

> orthodox analysis requires only that the relief sought on the basis of the cause of action be characterized as local or transitory. The characterization will control the issue of venue. If the relief sought is all local or all transitory, the process is relatively simple. But if both local and transitory relief are sought, the overall characterization will be controlled by the nature of the 'main relief' sought, or 'principal object' of the action.

*Massae,* 118 Cal. App. 3d at 535.

MA/DA's proposed injunctive relief is to prohibit DIRECTV from "permanently installing or maintaining hardware without permission from the landlord or authorized agent of the landlord, and requiring DIRECTV to either obtain landlord consent for all previously installed hardware or remove that hardware from the landlord's property." FAC, ¶¶ 30-33 & Prayer, (b). MA/DA also seeks to recover property damage caused by DIRECTV's alleged wrongful invasion of its property in its second and third counts. *Id.,* ¶¶ 37-38, 42-43 & Prayer, (c).

Under California law, all this relief is local. By its express terms, MA/DA's requested injunction purports to prohibit DIRECTV's unconsented entry onto and modification of real property (i.e., trespass), and to require DIRECTV to remove Equipment affixed to real property. A suit for an injunction against wrongful entry to and possession of land is local and within Section 392. *Williams v. Merced Irrigation Dist.,* 4 Cal. 2d 238, 241 (1935) (Section 392 applicable to action for injunction against "any right of possession in the land" and damages caused by reason of unconsented entry upon land); *Ophir v. Silver Mining Co. v. Super. Ct.,* 147 Cal. 467, 473, 477 (1905) ("So long as the complaint contains allegations of threatened future injuries to the realty, and prays for an injunction against future trespasses, the case is on a par with those cases in which a part of the damages claims was for injury to the freehold.").[4]

---

[4]   Trespass, which is encompassed within the broader "injury to real property" definition of Section 392, may occur not only with unconsented entry upon land, but also if the party, entering pursuant to a limited consent, i.e., limited as to purpose or place, proceeds to exceed those limits by divergent conduct on the land of another. *Restatement (Second) of Torts* § 168 (1965) ("A conditional or restricted consent to enter land creates a privilege to do so only in so far as the condition or restriction is complied with."); *Civic Western Corp. v. Zila Indus., Inc.,* 66 Cal. App. 3d 1, 17 (1977) (trespass committed when defendant had limited authority to enter property to remove personal

1    Similarly, a suit for tort damages arising from damage to a building is also local.  *Foundation*

2  *Engineers, Inc. v. Super. Ct.,* 19 Cal. App. 4th 104, 111-12 (1993) (holding "[a]n action may

3  essentially be local although it seeks damages" and concluding that "the essence of the action [for

4  construction defect] is for injuries to real property as the alleged damages are to buildings affixed to

5  real property").  As *Foundation Engineers* explains further, "[w]hen an injury to real property or a

6  building affixed to real property or a part of the building is alleged, trial in the county where the

7  building is located will facilitate examination of the alleged damage by expert witnesses and by the

8  fact finder."[5]  *Id.* at 113.  In reaching its decision that the relief pertained to "injury to property"

9  within the meaning of Section 392, the court distinguished other cases where the injury to property

10  arose from breach of a (construction) contract.  *Id.*  Here too, MA/DA does not base its claim for

11  property damage on breach of a contract with DIRECTV; it is a tort claim, founded on DIRECTV's

12  alleged illegal trespass by way of unconsented Equipment installations on the property.  As the

13  Supreme Court of California has explained, "[t]here is as little doubt that, where the whole or any

14  part of the damages claimed is for the injury to the freehold, the action is local and not transitory."

15  *Ophir Silver Mining Co.*, 147 Cal. at 473.

16    Therefore in this case, *both* forms of relief sought by the plaintiff are local in nature, thus,

17  there is no question the action is local and the "main relief" rule (used to determine the character of a

18  "mixed" local / transitory action) is unnecessary.  *Massae,* 118 Cal. App. 3d at 536 ("if all of the

19  relief should be similarly characterized, the 'main relief rule' will not be needed.").

20

21

_____

22  property but exceeded consent when defendant entered and ejected other landlord's employees and
changed the locks to the property).

23  [5]  Under California law, buildings affixed to land become part of the freehold, or realty.  Cal. Civ.
Code. § 660 ("A thing is deemed to be affixed to land when … permanently resting upon it, as in the

24  case of buildings."); *Los Angeles Trust & Sav. Bank v. Bortenstein,* 47 Cal. App. 421, 424 (1920)
("In the present case the city caused damage to real property that Bortenstein's grantors had

25  mortgaged to plaintiff.  **When the floods came the buildings on the mortgaged property were a
part of the realty.  The damage to the buildings, as well as to the land, was damage to the**

26  **realty.  The fact that, in the action against the city for damages, the court awarded Bortenstein
$10,000 as and for damage to the buildings and improvements, does not detract from the fact**

27  **that the damage so awarded was damage for injury to the freehold**.") (emphasis added).

28

### 4.    This action is also local because its essence is trespass.

Beyond the "main relief" rule, the action is local because it is grounded in trespass, as it arises from a breach of the primary right to exclude others from entering one's property without proper consent.  Indeed, MA/DA has pled trespass as a legal theory.  Even though MA/DA labels its second and third counts as simple negligence, the Court should look at the substance of the allegations rather than the plaintiff's characterization to determine their true nature.  *See, e.g., DeCoe v. Gen. Motors Corp.,* 32 F.3d 212, 216 (6th Cir. 1994) (not bound by "well-pleaded complaint" rule, but looks to essence of plaintiff's claim to determine whether plaintiff is attempting to disguise what is essentially a contract claim as a tort of interference with contract); *Jarbough v. Attorney Gen. of U.S.,* 483 F.3d 184, 189 (3d Cir. 2007) (looking beyond the label attached by party to characterize the claim to determine whether the court has jurisdiction over the claim).  In determining whether an action is local or transitory, courts will look at the essence of the allegations, not the form given it by the plaintiff.  *See Strosnider*, 32 Cal. App. 2d at 109.

What MA/DA has described as a negligence claim is really negligent trespass, as it is based on the duty to not "illegally invade the Property of Plaintiff and Class Members without consent to install the Equipment."  FAC, ¶ 35.  This, of course, defines negligent trespass precisely:  "The essence of the cause of action for trespass is an 'unauthorized entry' onto the land of another . . . .  Where there is a consensual entry, there is no tort, because lack of consent is an element of the wrong."  *Civic Western Corp. v. Zila Indus., Inc.,* 66 Cal. App. 3d 1, 16-17 (1977); *Miller v. Nat'l Broad. Co.,* 187 Cal. App. 3d 1463, 1480 (1986); *see* 5 Witkin, *Summary of California Law, Torts* § 696 (10th ed. 2005), at 1021-1022.  Similarly, MA/DA alleges that its UCL claim is tethered to California's criminal trespass statute, and one of the alleged unfair practices is "[e]ntering and encroaching on Plaintiff's and class members' property and illegally installing and maintaining its Equipment for its own profit without authorization from Plaintiff and class members."  FAC, ¶¶ 30(a), 32.  Trespass claims are inherently local, and have been for at least 200 years.  *Kingsborough v. Sprint Commc'ns Co.,* 673 F. Supp. 2d 24, 31 (D. Mass. 2009) ("Modern federal courts have consistently read *Livingston* to mean that 'an action for trespass to land, although an *in personam* action seeking monetary relief, was nevertheless local in nature.'") (*citing Hayes v. Gulf Oil Corp.,*

821 F.2d 285, 287 (5th Cir. 1987)).   The essence of this action is trespass – the Court must necessarily decide whether DIRECTV's installation was consented to by the landlord or an unauthorized trespass.   *See also Strosnider,* 32 Cal. App. At 108-09 ("It is quite clear . . . that plaintiff would have to prove ownership of his own real property before he could establish any right to damages.   In our opinion, this would call for the determination, in some form, of an estate or interest in real property.")

### 5.   The Court lacks jurisdiction over any claims that do not arise from California property.

This case is in many ways similar to *Kingsborough*.   In *Kingsborough*, landowners brought a nationwide class action against Sprint and two other telephone companies based on their installation of fiber optic cables on railroad rights-of-way overlying plaintiffs' lands.   After years of litigation involving dozens of lawsuits, plaintiffs mediated a global settlement and sought to have it entered in the federal district court of the District of Massachusetts.   At the final approval hearing, the court sustained an objection to the settlement based on the local action doctrine and ruled that it lacked subject matter jurisdiction over the non-Massachusetts-based claims.   673 F. Supp. 2d at 31-34.   The court focused on the nature of claims, which sounded in trespass:

> The issues of trespass and land ownership are at the heart of all of [Plaintiffs'] claims, rendering them essentially local in nature . . . . Plaintiff's **primary claim is one for trespass – that is, a claim that Defendants installed fiber-optic cable on his land without his permission.   The other claims also derive from the alleged unlawful use of the land.   In all three claims, the parties' ownership interests in the land are essential elements.   If Defendants have not unlawfully used Plaintiff's land, none of Plaintiff's claims will stand.**   The potential for dispute over land ownership is a major reason that courts have characterized trespass actions as local, and Plaintiff's claims hinge on the dispute over land ownership.   Thus, they are essentially local in nature.

*Id.* at 32-33 (emphasis added) (*quoting Hallaba v. Worldcom Network Servs., Inc.,* 196 F.R.D. 630, 647 (N.D. Okla. 2000)).

Here, just as in *Kingsborough*, the unauthorized use of property comprises the core of this litigation, and the relief sought is local under California law.   In both the negligence and the UCL claims, MA/DA's ownership interest in the property and lack of consent for use are essential elements.   Moreover, as with *Kingsborough*, there are no contract claims at issue here:   MA/DA has

1   no contractual relationship whatsoever with DIRECTV.  And, as there, MA/DA seeks an order

2   requiring the removal of the unauthorized equipment installed by the defendant.  *Id*. at 33.  Thus, the

3   "heart of the claims presented requires a determination as to the title and land ownership.  The case

4   affects the property rights of thousands – if not hundreds of thousands – [of] individual landowners

5   across the United States. . . . The very heart of this matter sounds in trespass and concerns disputes

6   over the ownership of the land."  *Id*.  Because of the local action doctrine, the Court has no

7   jurisdiction over claims of absent putative class members outside California.

8   **6.      CAFA's local controversy exception defeats jurisdiction because at least one-third of the putative class members must be non-California citizens.**

9   Federal jurisdiction in this case is premised on diversity of citizenship under CAFA.  CAFA

10  creates federal court jurisdiction over certain class actions in which the amount in controversy

11  exceeds $5 million, and in which any of the members of a class of plaintiffs is a citizen of a state

12  different from any defendant.  CAFA's "local controversy" exception precludes a court's exercise of

13  jurisdiction where two-thirds or more of the proposed class members and the primary defendant are

14  citizens of the state in which the action was originally filed.  28 U.S.C. §§ 1332(d)(2), (d)(4);

15  *Serrano v. 180 Connect, Inc.,* 478 F.3d 1018, 1022-23 (9th Cir. 2007).  The court has discretion as to

16  whether to exercise jurisdiction where between one-third and two-thirds of the proposed class

17  members are citizens of the same forum state as the primary defendant.  28 U.S.C. § 1332(d)(3);

18  *Serrano,* 478 F.3d at 1022.  Therefore, under CAFA, at least one-third of the class must be citizens

19  outside the forum state.  *See* 28 U.S.C. §§ 1332(d)(2)-(4); *Serrano,* 478 F.3d at 1022-24.

20  MA/DA does not explicitly allege the citizenship of its proposed class.[6]  Presumably, because

21  it does not limit its boundaries to California, MA/DA infers that non-Californians will dominate the

22  class.  *See* FAC, ¶ 19.  However, the local action doctrine limits the Court's jurisdiction over

23  MA/DA's claims to those involving California property.  *Supra*, II.B.  Consequently, the maximum

24  scope of the putative class is limited to individuals and entities who own property in California, and

25  there thus is no basis to conclude that more than one-third of the putative class members are citizens

26

27  _____

[6]   As the proponent of jurisdiction, MA/DA bears the burden of establishing its basis by preponderance of the evidence.  *Abrego v. Dow Chem. Co.,* 443 F.3d 676, 685 (9th Cir. 2006); *Serrano.,* 478 at 1024.

28

of a state other than California.  (Indeed, the Court would be within its rights to deny jurisdiction if up to two-thirds of the class members were non-Californians.)  Because DIRECTV is a California corporation with its principal place of business in California,[7] CAFA cannot supply the basis for federal jurisdiction.  As no other basis for jurisdiction is alleged or exists, the case must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

**C.   The Court Should Dismiss MA/DA's UCL Claim Under The Doctrine Of Equitable Abstention.**

Under California's equitable abstention doctrine, the Court has discretion to dismiss MA/DA's UCL claim on the basis that MA/DA's request for injunctive relief requires the Court to invade the rulemaking province for satellite dishes exclusively reserved to the FCC.  *See Desert Healthcare Dist. V. Pacificare, FHP, Inc.,* 94 Cal. App. 4th 781, 795 (2001) ("because the remedies available under the UCL, namely injunctions and restitutions, are equitable in nature, courts have the discretion to abstain from employing them").   It is well-settled that "[j]udicial abstention is appropriate when granting the requested relief would require a trial court to assume the functions of an administrative agency, or to interfere with the functions of an administrative agency."  *Alvarado v. Selma Convalescent Hosp.,* 153 Cal. App. 4th 1292, 1298 (2007); *see also Shamsian v. Dep't. of Conservation,* 136 Cal. App. 4th 621, 642 (2006) (holding equitable abstention barred UCL claim where judicial intervention would "interfere" with the Department of Conservation's "complex statutory arrangement").

By seeking a nationwide injunction, MA/DA has asked this Court to impose significant requirements on DIRECTV regarding how it—and potentially other satellite television dish providers—must conduct satellite installations nationwide.  As to future installations, MA/DA seeks an injunction prohibiting DIRECTV from installing Equipment without the consent of the landlord.  FAC, Prayer, (b).  By making no exception even in cases where the tenant obtains the landlord's consent, the tenant's lease expressly permits the installation, or, critically, the FCC's OTARD Rule

---

[7]   The FAC continues to incorrectly allege that DIRECTV is a Delaware corporation, though it correctly alleges DIRECTV's principal place of business is in California.  *See* FAC, ¶ 4.  DIRECTV, Inc. is incorporated in the State of California.   (RJN, Ex. D).   The error is nevertheless inconsequential, because citizenship for diversity purposes is both a corporation's principal place of business and state of incorporation.  28 U.S.C. § 1332(c)(1).

1   authorizes installation without landlord consent, MA/DA seeks to impose extremely significant

2   hurdles to the installation of satellite Equipment and establish a de facto FCC rule regarding such

3   procedures.  Indeed, this suit is based on MA/DA's objection to tenants obtaining *verbal* consent

4   from landlords for installations, and therefore MA/DA would require DIRECTV to obtain written

5   consent from landlords before conducting any installations.  This is the practice that MA/DA

6   approvingly alleges DIRECTV's competitor, Dish Network, follows[8] and MA/DA does not

7   challenge DIRECTV's use of Part 1 of the Permission Form in which tenants obtain the landlords'

8   written authorization.  *See* FAC, ¶14.  The injunction violates the FCC's rule-making authority.

9        The Telecommunications Act of 1996 granted the FCC "*exclusive jurisdiction* to regulate the

10  provision of direct-to-home satellite services . . . ."  47 U.S.C. § 303(v) (emphasis added).  The Act

11  further mandates that the FCC promulgate regulations to prohibit restrictions that impair a viewer's

12  ability to install, maintain, or use over-the-air reception devices.  *See* § 207 of the

13  Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56 (1996).  Consistent with

14  Congress' directive, the FCC has implemented an extensive regulatory scheme—including the

15  OTARD Rule—that governs the installation, maintenance, and use of satellite dishes on rental

16  property.  *See In re Preemption of Local Zoning Regulation of Satellite Earth Stations and*

17  *Restrictions on Over-the-Air Reception Devices*, FCC 98-273, 1998 WL 888546 (F.C.C. Dec. 23,

18  1998) (hereinafter, "Second Report and Order").[9]

19       Under the FCC's regulations, there is no requirement that satellite dish providers obtain prior

20  written consent from landlords for installation of satellite dish equipment on rental property, or that

21  satellite providers themselves obtain landlord consent, as opposed to the tenants.  On the contrary, a

22  requirement to obtain prior written consent for installation of satellite dish equipment is inconsistent

23  with the FCC's mandate to remove restrictions, and to limit necessary restrictions to those no more

24

[8] DIRECTV disputes that this is Dish Network's practice.

25 [9] Although the FCC, in its discretion, has to date chosen to limit the OTARD Rule to areas within
the exclusive use or control of tenants (*see id.*), the FCC's exclusive authority in the field of satellite

26  dish regulations remains intact.  *See* 47 U.S.C. § 303(v).  MA/DA's suit is not restricted to
installations outside of exclusive use or control areas, nor is that term subject to precise definition in

27  the abstract.  Rather, it turns on the specific description of each tenant's leasehold in his lease, and
may also involve custom and practice at the property, as well as state law.  *See* discussion in

28  DIRECTV's Motion to Strike, filed concurrently herewith, at pp. 9-12.

burdensome than necessary.  *See In re Philip Wojcikewicz,* CSR-6030-0, 2003 WL 22227634 (F.C.C. Sept. 25, 2003) (ruling that association's restrictions requiring prior written consent for installation of antenna on petitioner's roof deemed to be within his exclusive use violated the OTARD Rule); *In re CS Wireless Systems, Inc. d/b/a Omnivision of San Antonio,* CSR 4947-O, 1997 WL 631407 (F.C.C. Oct. 14, 1997) (ruling that association's restrictive covenants requiring prior written approval for antenna installation violated the OTARD Rule to the extent they impaired the installation, maintenance or use of over-the-air reception antennas).  Written consent is no more valid than verbal consent and is far more burdensome, and may, as a practical matter, inhibit the installation of satellite dishes when landlords do not timely return written release forms or are not in a position to provide written consent (*e.g.,* if they are not on the premises or do not have access to fax or email at the time the request is made).  Similarly, an injunction requiring that *DIRECTV* interface directly with the landlord, as opposed to the tenant, will also impose an unnecessary and undue burden.

MA/DA's requested nationwide injunction amounts to a court-ordered rulemaking.  By proceeding in this Court rather than the FCC, MA/DA seeks to circumvent the formal procedures already put in place by the FCC to review rulemaking proposals.  Pursuant to 47 C.F.R. § 1.401, "[a]ny interested person may petition [the FCC] for the issuance, amendment or repeal of a rule or regulation."  47 C.F.R. § 1.401(a).  *See also Nat'l Science & Tech. Network, Inc. v. F.C.C.,* 397 F.3d 1013, 1014 (D.C. Cir. 2005) (noting there are formal procedures to petition FCC for rulemaking). Given that Congress vested broad powers in the FCC to regulate direct-to-home satellite services, it would be improper for this Court to interfere with the FCC's rulemaking functions.[10]  *See Building Owners & Managers Ass'n Int'l v. F.C.C.,* 254 F.3d 89, 92 (D.C. Cir. 2001) (The Commission may

---

[10]  Notably, the FCC permits parties to "petition the Commission for a declaratory ruling under § 1.2 of this chapter, or a court of competent jurisdiction, to determine whether a particular restriction is permissible or prohibited under this section."  47 C.F.R. § 1.4000(e).  This limited authorization for the juridical resolution of the validity of a particular restriction on an antennae or satellite dish installation is distinctly different from rulemaking.  The FCC has retained exclusive jurisdiction for rulemaking, pursuant to the Telecommunications Act of 1996.  47 U.S.C. § 303(v).  With its sweeping nationwide mandatory injunction, MA/DA seeks to adjudicate far more than the issue of whether a DIRECTV satellite dish has been installed at its property in compliance with the OTARD Rule.

"perform any and all acts, make such rules and regulations, and issue such orders … as may be necessary in the execution of its functions.") (*citing* 47 U.S.C. § 154(i)); *see also Opera Plaza Residential Parcel Homeowners Ass'n v. Hoang*, No. C. 02-01084 WHA, 2002 WL 1787214 (N.D. Cal. July 22, 2002), *aff'd,* 376 F.3d 831, 836 (9th Cir. 2004) (noting FCC's power to promulgate regulations concerning direct-to-home satellite services).

Under California law, equitable abstention is appropriate where, as here, a plaintiff asks the court to adjudicate conduct under the UCL that implicates a complex regulatory scheme devised and administered by a specific governmental agency with expertise in the area.  *See Shamsian,* 136 Cal. App. 4th at 641.  *Shamsian* is instructive here.  Just as the plaintiff in *Shamsian* sought to impose affirmative duties that were not required under the law at issue in that case (the Recycling Act) on defendants under the guise of a UCL violation, MA/DA's request for injunctive relief requiring DIRECTV to change its installation authorization policy seeks to impose an affirmative duty upon DIRECTV that is not mandated under the FCC regulations, and is conflicts with them.  DIRECTV need only comply with the FCC's rules as they exist, not as MA/DA believes the rules should be. The appropriate channel for MA/DA to seek its requested relief is to file a petition for rulemaking with the FCC, pursuant to 47 C.F.R. § 1.401(a), and not by means of a court-imposed injunction, which threatens to undermine the FCC's regulatory authority in this field.  The Court should, therefore, dismiss MA/DA's UCL claim under the doctrine of equitable abstention.  *See Reudy v. Clear Channel Outdoor, Inc.,* No. 02-5438 SC, 2010 WL 4918792, at *1 (N.D. Cal. Nov. 29, 2010) (dismissing UCL claim under equitable abstention doctrine, where the injunctive relief sought could have thrown city agency's policy "out of balance"); *Alvarado,* 153 Cal. App. 4th at 1303-04 (affirming demurrer where adjudicating class action suit "would require the trial court to assume general regulatory powers over the health care industry through the guise of enforcing the UCL, a task for which the courts are not well-equipped").

### D.     MA/DA Fails To Allege Facts Establishing Injury In Fact.

MA/DA alleges only that Equipment installation occurred "in areas of the Property," without alleging the specific location.  This fact is necessary because the FCC's OTARD Rule "prohibits governmental and non-governmental restrictions that impair a viewer's ability to receive video

programming through devices designed for over-the-air reception of DBS, MDS, or television broadcast signals." *Second Report and Order,* 1998 WL 888546, at *71027; 47 C.F.R. § 1.4000(a). Lease provisions that restrict satellite dish installation in areas under the "exclusive use or control" of the tenant are preempted by the OTARD Rule. Accordingly, lessees of property are permitted to install DIRECTV satellite dishes *without* obtaining landlord consent in spaces under their exclusive use or control within their leasehold. As described by the FCC,

> In practice, under the amendment to our rules, renters will be able … to install Section 207 reception devices **wherever they rent space outside of a building, such as balconies, balcony railings, patios, yards, gardens or any other similar areas**.

*Second Report and Order*, ¶ 3, 1998 WL 888546, at * 71028 (emphasis added); 47 C.F.R. § 1.4000(a)(1). Consequently, an allegation of an installation somewhere on MA/DA's "property" says nothing regarding the tenant's exclusive use or control area, and does not establish an injury because MA/DA's consent may well not have even been required for the installation.

MA/DA also fails to allege that it did not give consent for the installation of satellite dish equipment to any of its tenants. MA/DA alleges only that it did not give such permission to DIRECTV. *See* FAC, ¶ 17. If MA/DA consented to the tenants' installation of the Equipment, as allegedly stated by the tenants in their Permission Forms (FAC, ¶11), then it obviously has suffered no injury by DIRECTV's reliance on that consent. There is no requirement under FCC regulation or state law that landlord consent be provided in writing. Consent, whether verbal or written, is consent.

## IV.    CONCLUSION

For the foregoing reasons, the Court should grant DIRECTV's motion to dismiss MA/DA's First Amended Complaint in its entirety.

DATED:  May 31, 2011                  ANDREW E. PARIS
                                      GRACE W. KANG
                                      SAYAKA KARITANI
                                      **ALSTON & BIRD LLP**

                                       /s/ Andrew E. Paris
                                      _____
                                      Andrew E. Paris
                                      Attorneys for Defendant **DIRECTV, INC.**